IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN ODELL BOULWARE, | No. C 06-2733 CW (PR) |
| Plaintiff, | ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS, GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| D.M. DUNSTAN, et al., | |
| Defendants. | (Docket nos. 31, 35) |

## INTRODUCTION

Plaintiff Ruben Odell Boulware, a prisoner of the State of California, is currently incarcerated at Ironwood State Prison (ISP). While he was incarcerated at the Correctional Training Facility (CTF) in Soledad, California, Plaintiff filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging various constitutional rights violations by CTF prison officials.

Plaintiff has filed a motion for summary judgment. Defendants oppose the motion and have filed motions to dismiss and for summary judgment. Plaintiff opposes those motions. For the reasons discussed below, Defendants' motion to dismiss is GRANTED IN PART, Defendants' motion for summary judgment is GRANTED, and Plaintiff's motion for summary judgment is DENIED.

PROCEDURAL BACKGROUND

On April 21, 2006, Plaintiff filed the present action, raising the following claims: (1) violation of his First Amendment right to access the courts; (2) violation of his First Amendment rights when he was retaliated against for filing grievances; (3) violation of his Due Process rights at a disciplinary hearing; (4) violation of his Eighth Amendment right to be free from cruel and unusual punishment when he was denied clothing; (5) violation of his Eighth Amendment right to be free from cruel and unusual punishment when he was denied outdoor exercise; (6) violation of his Eighth Amendment right to be free from cruel and unusual punishment when he was exposed to overcrowded conditions; (7) violation of his right to equal protection when he was denied outdoor exercise based on his race; (8) violation of his right to privacy when he was strip-searched; and (9) violation of his right to equal protection when he was strip-searched based on his race.

In an order dated January 31, 2007, the Court found Plaintiff's first, second and fifth claims to be cognizable; dismissed Plaintiff's fourth, sixth and eighth claims with prejudice; and dismissed Plaintiff's third, seventh and ninth claims with leave to amend. Plaintiff was given thirty days from the date of the order to file an amended complaint remedying the deficiencies of his third, seventh and ninth claims. In an order dated May 30, 2007, the Court dismissed Plaintiff's third, seventh and ninth claims with prejudice because he failed to file an amended complaint within the designated time.

Defendants argue in their motion to dismiss that all of Plaintiff's remaining claims should be dismissed as unexhausted.

2

In support of their motion for summary judgment, Defendants claim: (1) the evidence shows that Plaintiff's constitutional rights have not been violated; and (2) qualified immunity protects them from liability for the acts alleged in the complaint.

BACKGROUND

I. Plaintiff's Grievances

During the times at issue, Plaintiff filed ten grievances. Four of those grievances are relevant to Plaintiff's remaining claims.

On September 10, 2005, Plaintiff submitted inmate grievance number CTF-05-3006, claiming that Defendants A. P. Kane and L. M. Trexler denied him outdoor exercise for eight weeks based upon race in violation of the Fourteenth Amendment. Plaintiff's appeal was denied at all three levels.

On October 25, 2005, Plaintiff submitted inmate grievance number CTF-05-3979, claiming the showering and exercise policies at CTF were insufficient. On February 2, 2006, Plaintiff refused Defendant K. L. Hoffman's attempt to interview him regarding this grievance. The grievance was dismissed for Plaintiff's failure to participate in the grievance process as required by California Code of Regulations title 15, § 3084.4(d). Plaintiff did not submit this appeal to either the Second or Director's Level.

On December 3, 2005, Plaintiff submitted inmate grievance number CTF-06-0211, claiming that Defendant D. M. Dunstan was harassing him. On June 5, 2006, Plaintiff's appeal to the Director's Level was received. The Director's Level of Review was completed August 29, 2006.

On December 5, 2005, Plaintiff submitted inmate grievance

3

number CTF-05-3936, claiming staff misconduct by Defendant Dunstan during a cell search on December 2, 2005.  On January 18, 2006, Plaintiff refused Defendant Dunstan's attempt to interview him regarding this appeal.  The appeal was dismissed for Plaintiff's failure to participate in the grievance process as required by California Code of Regulations title 15, § 3084.4(d).  Plaintiff did not appeal to the Second or Director's Level of Review.

II.  CTF's Lockdown Status

During the times at issue in this case, Plaintiff, a forty-five-year-old African-American man, was housed at CTF, North Facility, Shasta Hall.  Plaintiff had access to B-yard.

On July 19, 2005, a riot broke out on CTF North Facility involving African-American and Hispanic inmates.  As a result of this riot, all of North Facility was placed on modified programming.  As of August 23, 2005, all inmates in North Facility, were returned to normal programming with the exception of the African-American, Southern Hispanic, and Mexican national inmates pending further review and investigation of the previous violence.

As of September 12, 2005, following a stabbing incident involving Northern Hispanic inmates in North Facility B-yard, Northern Hispanic, African-American, Southern Hispanic, and Mexican nationals remained on modified programming.  All other inmates in North Facility B-yard remained on normal programming.  As of September 14, 2005, African-American inmates in North Facility B-yard were returned to normal programming.

On September 16, 2005, all inmates in North Facility B-yard were placed on modified programming following a stabbing incident involving white inmates on B-yard.  On September 29, 2005, all

4

inmates in North Facility were returned to normal programming with the exception of white and Southern Hispanic inmates. As of October 4, 2005, only Southern Hispanic and white inmates remained on modified programming.

On October 15, 2005, another riot between African-American and Hispanic inmates occurred on B-yard, requiring the entire facility to be placed on modified programming. As of October 18, 2005, only African-American, Southern Hispanic, and Mexican national inmates remained on modified programming.

On October 19, 2005, an inmate-manufactured weapon was located on B-yard necessitating that all B-yard inmates be placed on modified programming. By October 21, 28 2005, white, Northern Hispanic, and other inmates were returned to normal programming, leaving African-American, Southern Hispanic, and Mexican nationals on modified programming.

On November 7, 2005, Northern Hispanic inmates on B-yard in North Facility were involved in another stabbing incident which required placing those inmates back on modified programming. At this time African-American, Northern Hispanic, Southern Hispanic, and Mexican national inmates remained on modified programming pending results of investigations relating to the ongoing inmate unrest.

As of December 5, 2005, all inmates in North Facility B-yard were returned to normal programming, with the exception of African-American, Southern Hispanic and Mexican national inmates under the age of thirty-five.

On December 11, 2005, the entire population in North Facility was placed back on modified programming following the discovery of

5

several missing metal bucket brackets and two missing T-16 canisters. As of December 30, 2005, all inmates in North Facility, B-yard were returned to normal programming.

DISCUSSION

I. Motion to Dismiss

Defendants claim that all of Plaintiff's remaining claims should be dismissed because Plaintiff has failed to exhaust his administrative remedies.

A. Legal Standard

Pro se pleadings must be liberally construed, especially where civil rights claims are involved. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide, "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In order to satisfy the requirement, the exhaustion of all "available" remedies is mandatory; those remedies need not meet federal standards, nor must they be "plain, speedy, and effective." Id.; Booth v. Churner, 532 U.S. 731, 739-40 & n.5 (2001).

The State of California provides its inmates and parolees the right to appeal administratively "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies

within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution; (2) formal written appeal on a 602 inmate appeal form; (3) second level appeal to the institution head or designee; and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation. Id. § 3084.5; Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997). This satisfies the administrative remedies exhaustion requirement under § 1997e(a). Id. at 1237-38.

When no other administrative remedy is available, the exhaustion requirement is deemed fulfilled. Booth, 532 U.S. at 736 n.4. The obligation to exhaust persists as long as some remedy is available; when that is no longer the case, the prisoner need not further pursue the grievance. Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005).

Non-exhaustion under § 1997e(a) is an affirmative defense. Jones v. Bock, 127 S. Ct. 910, 922-23 (2007); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required specifically to plead or demonstrate exhaustion in their complaints. Jones, 127 S. Ct. at 921-22. Because there can be no absence of exhaustion unless some relief remains available, a movant claiming lack of exhaustion must demonstrate that pertinent relief remained available, whether at unexhausted levels or through awaiting the results of the relief already granted as a result of that process. Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005).

B. First Amendment Claim

Plaintiff claims that his First Amendment right to access the

7

courts was violated by Defendants Dunstan, Hoffman and Trexler when they attempted to stifle his inmate grievances.

The record shows that Plaintiff has filed one grievance that could be liberally construed as stating a First Amendment claim. In inmate grievance number CTF-05-3936, Plaintiff alleged that, on December 4, 2005, he submitted an appeal to obtain an informal response pertaining to a cell-search conducted by Defendant Dunstan. Plaintiff claims that Defendant Dunstan returned the appeal to him and instructed Plaintiff to "send it to appeals." This grievance could be construed as alleging that Defendant Dunstan tried to stifle Plaintiff's appeal.

The record shows that grievance CTF-05-3936 was dismissed at the first level. Plaintiff pursued no further levels of review. Therefore, all available administrative remedies with respect to this grievance have not been exhausted. Barry, 985 F. Supp. at 1237.

Plaintiff contends that Defendants Dunstan, Hoffmann and Trexler collectively blocked his attempt to appeal the grievance without the authority to do so. Specifically, Plaintiff claims that he was never interviewed in connection with this grievance. However, the record shows that Plaintiff refused to leave his cell to be interviewed by Defendant Trexler. (Dennis Decl. ¶ 13, Ex. J.) "An appellant's refusal to be interviewed or cooperate with the reviewer shall result in cancellation of the appeal." Cal. Code Regs. tit. 15, § 3084.4(d).

The Court finds that Defendants have met their burden of raising and proving the absence of exhaustion of Plaintiff's First Amendment claim. Accordingly, this claim is dismissed without

prejudice. Plaintiff may re-file it in another complaint when it is properly exhausted.

C. Retaliation Claim

Plaintiff contends that Defendant Dunstan retaliated against him for filing inmate grievances.

The record shows that Plaintiff filed two grievances that could be liberally construed as stating a retaliation claim: inmate grievance number CTF-05-3936 and inmate grievance number CTF-06-0211. As previously discussed, Plaintiff has not exhausted the administrative remedies for inmate grievance number CTF-05-3936.

In inmate grievance number CTF-06-0211, Plaintiff alleged that Defendant Dunstan harassed him for filing grievances. On August 29, 2006, this grievance was exhausted. However, because the grievance was not exhausted until nearly two months after Plaintiff filed the instant action, the Court may not consider it. See Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006) (A plaintiff "may initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed.").

Because Plaintiff did not exhaust his administrative remedies with respect to his retaliation claim in a timely manner, this claim is dismissed without prejudice. Plaintiff may re-file it in another complaint.

D. Denial of Access to Outdoor Exercise

Plaintiff claims that his Eighth Amendment right to be free from cruel and unusual punishment was violated by Defendants Trexler and Kane when they denied him access to outdoor exercise.

The record shows that Plaintiff filed two grievances that

9

could be liberally construed as stating a denial of exercise claim: inmate grievance number CTF-05-3006 and inmate grievance number CTF-05-3979.

In inmate grievance number CTF-05-3979, Plaintiff alleged that the showering and exercise policies at CTF were insufficient. The record shows that on February 2, 2006, Plaintiff refused Defendant Hoffman's attempt to interview him regarding this grievance. (Dennis Decl. ¶ 11, Ex. H.) The grievance was dismissed for Plaintiff's failure to participate in the grievance process as required by California Code of Regulations title 15, § 3084.4(d). Because Plaintiff did not appeal this grievance to either the Second or Director's Level, it is not exhausted.

In inmate grievance number CTF-05-3006, Plaintiff stated that he was denied access to outdoor exercise for eight weeks based solely on his race. Defendants admit that inmate grievance number CTF-05-3006 has been exhausted, but argue that the Court should not consider it because Plaintiff is stating a Fourteenth Amendment equal protection claim, which the Court has previously dismissed, not an Eighth Amendment claim. Nonetheless, the Court will liberally construe this pro se civil rights claim as stating an Eighth Amendment claim. See Hughes, 449 U.S. at 9.

Because Plaintiff has exhausted administrative remedies with respect to his denial of exercise claim in a timely and complete manner, Defendants' motion to dismiss this claim as unexhausted is DENIED.

II. Motion for Summary Judgment

Defendants move for summary judgment on all of Plaintiff's remaining claims. Because the Court has dismissed Plaintiff's

10

First Amendment and retaliation claims as unexhausted, the Court does not address them on the merits.

   A.  Legal Standard

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods. Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir.

11

2000).

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Id.

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

B. Denial of Access to Outdoor Exercise

Plaintiff alleges that from July 19 to the end of September, 2005, he was denied access to outdoor exercise in violation of his Eighth Amendment right to be free of cruel and unusual punishment.

The Constitution does not mandate comfortable prisons, but

neither does it permit inhumane ones. Farmer v. Brennan, 511 U.S. 825, 832 (1994). The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishment," the Eighth Amendment places restraints on prison officials. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The Eighth Amendment also imposes duties on these officials, who must provide all prisoners with the basic necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety. Farmer, 511 U.S. at 832; DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 199-200 (1989).

Exercise is one of the basic human necessities protected by the Eighth Amendment. Wilson v. Seiter, 501 U.S. 294, 304 (1991). "[T]he denial of fresh air and regular outdoor exercise and recreation constitutes cruel and unusual punishment." Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979). Some form of regular exercise, including outdoor exercise, "is extremely important to the psychological and physical well being" of prisoners. Id. Prison officials therefore may not deprive prisoners long-term of regular outdoor exercise. Id.

Deprivation of necessities by a prison official violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is objectively, sufficiently serious, Farmer, 511 U.S. at 834, and (2) the prison official possesses a sufficiently culpable state of mind. Id. In determining whether a deprivation of a basic necessity, such as outdoor exercise, is sufficiently serious to satisfy the objective component, a court

13

must consider the circumstances, nature and duration of the deprivation. Spain, 600 F.2d at 199. To satisfy the subjective component, the requisite state of mind depends on the nature of the claim. In prison-conditions cases, the necessary state of mind is one of "deliberate indifference." See, e.g., Farmer, 511 U.S. at 834 (inmate safety).

The denial of outdoor exercise for security reasons does not violate the Eighth Amendment. LeMaire v. Maass, 12 F.3d 1444, 1458 (9th Cir. 1993). In LeMaire, the Ninth Circuit reversed the district court's post-trial findings that depriving the plaintiff of outdoor exercise during his nearly five year confinement amounted to an Eighth Amendment violation. Id. The plaintiff in LeMaire had attacked two correctional officers and vowed to attack again; therefore, the court found that restricting his exercise privileges to exercising only within his cell did not meet the subjective requirements for an Eighth Amendment violation because "prison officials are authorized and indeed required to take appropriate measures to maintain prison order and discipline and protect staff and other prisoners from such violent inmates." Id. Similarly, in Hayward v. Procunier, the Ninth Circuit affirmed the district court's rejection of an Eighth Amendment claim where the plaintiffs were denied outdoor exercise for five months following a lockdown in response to a "genuine emergency." 629 F.2d 599, 603 (9th Cir. 1980), cert. denied, 451 U.S. 937 (1981).

Plaintiff's deprivation was not objectively serious. Plaintiff was denied access for periods of eleven and eight weeks, far shorter than the period of deprivation in Spain or Lemaire. Furthermore, the record shows that prison officials made various

14

attempts during this period to restore privileges and return to normal programming.

Plaintiff has not presented any evidence to show that Defendants acted with deliberate indifference. The record and Plaintiff's own allegations show that he and other prisoners were denied outdoor exercise pursuant to various lockdown procedures enacted by prison officials in response to various incidents of unrest. As previously noted, the denial of outdoor exercise for security reasons does not violate the Eighth Amendment. See Hayward, 629 F.2d at 603.

Plaintiff contends that Defendants acted with deliberate indifference because they did not implement lockdown procedures that would have allowed him access to outdoor exercise. For example, Plaintiff argues that African-American and Hispanic inmates could have been given access to medical facilities and outdoor exercise on alternate days. However, as noted above, case law dictates that "prison officials are authorized and indeed required to take appropriate measures to maintain prison order and discipline and protect staff and other prisoners from such violent inmates." Lemaire, 12 F.3d at 1458.

Because Plaintiff has not made a showing sufficient to survive summary judgment on this claim, Defendants are entitled to summary judgment.

C.  Qualified Immunity

In the alternative, Defendants claim that they are entitled to summary judgment based on qualified immunity.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" Saucier v. Katz, 533 U.S. 194, 202 (2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). Defendants may have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Id. "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991).

To determine whether a defendant is entitled to qualified immunity, the court must engage in the following inquiries. At the outset, the court must determine whether the plaintiff has alleged the deprivation of an actual constitutional right. Conn v. Gabbert, 526 U.S. 286, 290 (1999). In other words, the court must ask, "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Brosseau v. Haugen, 543 U.S. 194, 197 (2004); Saucier, 533 U.S. at 201. If this inquiry yields a positive answer, then the court proceeds to determine if the right was "clearly established." Id.

The inquiry as to whether the right at issue was clearly established must be made in light of the specific context of the case, not as a broad general proposition. Saucier, 533 U.S. at

16

202. "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." Hope v. Pelzer, 536 U.S. 730, 741 (2002). As the Supreme Court has explained, "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." Id. at 753. The plaintiff bears the burden of proving the existence of a clearly established right at the time of the allegedly impermissible conduct. Maraziti v. First Interstate Bank, 953 F.2d 520, 523 (9th Cir. 1992).

If the law is determined to be clearly established, the next question is whether, under that law, a reasonable official could have believed his or her conduct was lawful in the situation confronted. Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993). If the law did not put the officer on notice that his or her conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. Saucier, 533 U.S. at 202. Therefore, qualified immunity shields an officer from suit when he or she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances he or she confronted. Id. at 206. The defendant bears the burden of establishing that his or her actions were reasonable, even though he or she violated the plaintiff's constitutional rights. Doe v. Petaluma City School Dist., 54 F.3d 1447, 1450 (9th Cir. 1995); Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995); Maraziti, 953 F.2d at 523.

Even if Defendants violated Plaintiff's Eighth Amendment rights, they are entitled to qualified immunity because they have

produced sufficient evidence to show that they could have believed that their actions were reasonable. During the time at issue, CTF experienced a series of violent incidents. Reasonable prison officials in Defendants' position could have thought that implementing lockdown procedures, whereby Plaintiff was denied access to outdoor exercise, was justified due the need to take appropriate measures to maintain prison order and discipline and protect staff and other prisoners. Accordingly, Defendants are entitled to judgment as a matter of law as to Plaintiff's Eighth Amendment claim based on qualified immunity.

III. Plaintiff's Motion for Summary Judgment

Plaintiff has filed a motion for summary judgment on all his remaining claims. Because the Court has dismissed Plaintiff's First Amendment and retaliation claims as unexhausted, the Court does not address them on the merits.

Because the parties have filed cross-motions for summary judgment, the Court has considered all of the evidence submitted by Defendants in support of their motions, as well as the admissible evidence submitted by Plaintiff to evaluate whether summary judgment should be granted to Plaintiff. See Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir. 2001). For the reasons discussed above, the Court concludes that, with respect to his denial of access to outdoor exercise claim, Plaintiff has not established that Defendants acted with deliberate indifference or that he suffered physical injury. On Plaintiff's motion for summary judgment, when the Court, as it must, regards as true Defendants' evidence and draws all reasonable inferences in favor of Defendants, Celotex, 477 U.S. at 322-23, no

genuine issues of material fact exist which entitle Plaintiff to judgment as a matter of law. Accordingly, Plaintiff's motion for summary judgment (docket no. 31) is DENIED.

CONCLUSION

For the foregoing reasons,

1. Defendants' motion to dismiss Plaintiff's First Amendment and retaliation claims for failure to exhaust (docket no. 35) is GRANTED. These claims are dismissed without prejudice. Plaintiff may re-file these claims in a new complaint. Defendants' motion for summary judgment (docket no. 35) is GRANTED as to Plaintiff's Eighth Amendment claim and judgment in favor of Defendants shall be entered. Plaintiff's motion for summary judgment (docket no. 31) is DENIED.

2. The Clerk of the Court shall enter judgment in favor of Defendants, terminate all pending motions and close the file.

3. This Order terminates Docket nos. 31 and 35.

IT IS SO ORDERED.

Dated 12/18/07

CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN ODELL BOULWARE, | Case Number: CV06-02733 CW |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| D.M. DUNSTAN et al, | |
| Defendant. | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 18, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Emily L. Brinkman
CA Attorney General
455 Golden Gate Ave.
Suite 11000
San Francisco, CA 94102

Ruben Odell Boulware #V16965
California Mens Colony-East
P.O. Box 8101
San Luis Obispo, CA 93409-8101

Dated: December 18, 2007

Richard W. Wieking, Clerk
By: Sheilah Cahill, Deputy Clerk